IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CLIFTON MAXWELL | ) | |
| | ) | |
| v. | ) | NO. 2:03-CR-72 |
| | ) | NO. 2:07-CV-143 |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM OPINION AND ORDER**

Clifton Maxwell ("petitioner") or ("Maxwell"), a federal prisoner, has filed a "Motion Under 28 USC § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody," [Doc. 92].[1] The United States has responded in opposition, [Doc. 109], and the matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit and the motion will be denied.

**I.    Procedural Background**

Maxwell was indicted by the federal grand jury on September 23, 2003, in a

---

[1] On September 22, 2008, petitioner filed a motion for leave to amend his § 2255 motion to raise allegations that "petitioner's Fifth, Sixth and Eighth Amendment to The [sic] U.S. Constitution were violated." [Doc. 100]. The motion was granted on April 29, 2009, [Doc. 104]. He has never filed any amendment, however.

four count indictment which charged him with conspiracy to distribute and possess with the intent to distribute 50 grams or more of crack cocaine and a quantity of heroin (Count One), distribution of a quantity of crack cocaine (Counts Two and Three), and possession of a firearm in furtherance of a drug trafficking offense (Count Four). On January 7, 2004, the United States filed notice of its intent to seek enhanced penalties under 18 U.S.C. § 851 because of petition's two prior felony drug convictions, [Doc. 23].

On April 19, 2004, petitioner pled guilty to Counts One and Four pursuant to a written plea agreement with the United States, [ Doc. 36]. A presentence report ("PSR") was ordered and sentencing was scheduled for July 26, 2004. On June 22, 2004, petitioner's court appointed attorney moved to withdraw from further representation of the petitioner on the basis that the petitioner had advised him in writing "that he questions whether he should have entered the plea and wishes to withdraw his plea." [Doc. 39]. The Court granted the motion to withdraw, appointed substitute counsel and ordered that, if the defendant wished to file a motion to withdraw his guilty plea, the motion should be filed as soon as possible, [Doc. 43].[2] The PSR was completed and disclosed to the parties and, on August 12, 2004, Maxwell, through counsel, gave notice that he had no objection to the PSR, [Doc. 46].

---

[2] Maxwell never filed a motion to withdraw his guilty plea.

The parties then jointly moved for a continuance of petitioner's sentencing, then set for September 30, 2004 on the basis "that there are currently activities underway which will effect the sentencing of the defendant." [Doc. 47].

Then, on October 13, 2004, the substitute counsel who had been appointed to represent petitioner moved to withdraw because of his medical condition, [Doc. 49]. That motion was granted by order entered October 25, 2004, and substitute counsel was once again appointed for the petitioner, [Doc. 52]. Various motions to continue were thereafter filed on the same basis as the previous motions. Finally, a sentencing hearing was held on June 26, 2006. [See Doc. 85].

The PSR determined a base offense level of 35 and a criminal history category of VI, resulting in a guideline range for imprisonment of 292 to 365 months. Because of his two prior felony drug convictions, however, petitioner faced a mandatory life term of imprisonment on the drug conviction plus a five year consecutive sentence for the firearm conviction. A government motion for downward departure was filed, [Doc. 84], and granted by the Court, and the petitioner was sentenced to 328 months of imprisonment as to Count One and to 60 months consecutive as to Count Four, for a net sentence of 388 months. Judgment was entered in the petitioner's case on July 12, 2006.[3] No direct appeal was filed and, on July 25, 2007, petitioner timely filed the

---

[3] Although the minutes of the June 26, 2006 sentencing hearing indicate that the defendant was sentenced to a total term of 388 months, the judgment erroneously indicates a total term of imprisonment

instant § 2255 motion.

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v.*

---

of 328 months, even though it notes that a sentence of 328 months as to Count One and 60 month as to Count Four to run consecutively was imposed.

*Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right

not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the

6

circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### III. Analysis and Discussion

In his § 2255 motion, Maxwell raises only two grounds. As "Ground One" he claims: "Denial of effective assistance of counsel." Under the section of the motion entitled "Supporting Facts" petitioner states: "Defense Counsel did not file a timely notice of appeal challenging the 21 US.C. [sic] § 851 enhancement based upon the use of a prior petty drug offense which doubled petitioner's statutory maximum sentence." As "Ground Two" petitioner asserts that: "Petitioner's conviction was obtained by a plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge or consequences." Under the section for "Supporting Facts", petitioner states: "Petitioner pled guilty to the one count indictment believing that his statutory maximum sentence would be 15 years. The Court sentenced him to 32 years based upon a Title 21 USC § 851 enhancement using a petty drug offense for simple possession of cocaine."

### 1. Failure to File Notice of Appeal

Claims of ineffective assistance of counsel are, as set forth above, analyzed under the now familiar two pronged inquiry of *Strickland v. Washington*, 466 U.S. 688 (1994), which requires the petitioner to show both that counsel's conduct was objectively unreasonable and that he was prejudiced by that deficient conduct. *Id.* at 694. Claims of ineffective assistance of counsel for failure to file a notice of appeal are evaluated applying the same standard. *See Roe v. Flores-Ortega*,

8

528 U.S. 470 (2000). In the *Roe* decision, the court referred to its prior decision in *Rodriguez v. United States*, 395 U.S. 327 (1969), stating that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed to do so. *Roe*, 528 U.S. at 477. *See also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that counsel's failure to perfect a direct appeal upon his client's request is a *per se* Sixth Amendment violation).

Nevertheless, the *Roe* court rejected a *per se* rule that an attorney must always file an appeal unless specifically told otherwise, and determined that when the client has neither told his attorney to file an appeal nor told him not to file an appeal, courts must evaluate the attorney's performance by asking whether the attorney "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. Where the attorney has not consulted with the defendant, the attorney's failure to do so may itself constitute deficient performance. *Roe*, 528 U.S. at 478. The attorney has a "duty to consult" when there is reason for him to think "(1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

A review of the record here reveals that the petitioner's claim lacks merit. First of all, petitioner makes no allegation that he directed his attorney to file a notice of appeal. He simply alleges that his lawyer should have done so. The relevant

9

question for the Court, under these circumstances, is whether the attorney had a "duty to consult" with the petitioner about filing a notice of appeal. For the purpose of deciding this motion, the court will assume that petitioner's attorney did not consult with the defendant about an appeal and will therefore analyze the matter based on whether petitioner's attorney had any duty to do so.

Nothing in the record, not even a conslusory allegation by the petitioner, suggests that the defendant reasonably demonstrated to counsel that he was interested in appealing. The only question, therefore, is whether there is any reason for counsel to think that the defendant would want to appeal. There is also nothing in this record which suggests that petitioner's counsel would have thought a rational defendant would want to appeal under the circumstances of this case. First of all, there were no non-frivolous grounds for appeal. In fact the only possible issue for appeal identified by Maxwell is that one of his prior felony drug convictions was for "a petty drug offense which doubled petitioner's statutory maximum sentence." This contention, addressed further below, lacks any credibility, however, because petitioner stipulated to the prior felony convictions, affirmed them at the time of sentencing,[4] and was

---

[4] Before sentence was imposed, Maxwell was asked by the Court to either affirm or deny the convictions alleged by the United States in the information filed pursuant to 18 U.S.C. § 851 and was advised that any challenge not made to those convictions before sentence was imposed could not thereafter be raised. Maxwell, when asked to admit or deny that "on September 20, 1994, in Oneida County Court in Utica, New York, you were convicted of a felony criminal sale of a controlled substance third degree on docket 194-147; and on May 19, 2000, in New York Criminal Court, New York City, New York you were convicted of felony possession of a controlled substance under docket number

10

clearly aware of the mandatory life sentence. Petitioner had pleaded guilty, which "reduces the scope of potentially appealable issues," *Roe*, 528 U.S. at 480, stipulated his offense conduct, and got the bargained for motion for downward departure which allowed the Court to impose a sentence below the mandatory minimum.

Moreover, petitioner knowingly and voluntarily waived his right to file a direct appeal. Paragraph 15 of the petitioner's plea agreement, [Doc. 36], provides that "defendant knowingly and voluntarily agrees to waive all rights to appeal his conviction or sentence on any ground . . . provided that the sentence does not exceed the statutory maximum for his crimes or does not otherwise constitute a violation of law." During the Rule 11 colloquy at his change of plea, the petitioner affirmatively acknowledged that he was aware that he had waived certain rights to appeal in his plea agreement and that he had discussed the waiver of rights with his attorney. [ *See* Doc. 101, p. 14.]

Under these circumstances, petitioner's attorney was under no duty to consult with him about the filing of an appeal and it was not deficient performance for petitioner's attorney not to file an appeal under the circumstances of this case. Petitioner's argument in this respect lacks merit.

2. **Voluntariness of Guilty Plea**

---

99NO66426," responded "I admit it." *See Doc*. 99, pp. 18-19.

Petitioner next asserts that his plea of guilty was "unlawfully induced" and was not made voluntarily or with understanding of the nature of the charge or the consequences of his guilty plea. More specifically, petitioner asserts that he pled guilty to the conspiracy count of the indictment believing that his statutory maximum sentence would be 15 years. Petitioner's claim fails for several reasons.

Initially, it should be noted that petitioner offers no facts in support of his conclusory allegations. With respect to petitioner's claim that the guilty plea was "unlawfully induced," he alleges no facts in support of the allegation, makes no attempt to identify the inducement he claims was offered, does not identify when or by whom the inducement was offered, or under what circumstances. Simply put, petitioner makes nothing more than a bare conclusory assertion that his plea of guilty was unlawfully induced. When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green*, 454 F.2d at, 53; *O'Malley*, 285 F.2d at 735 ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing"). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum*, 262 F.2d at 867. Secondly, the record affirmatively establishes that Maxwell's change of plea was not the result of pressure by any officer or agent of the government or the result of any promise of leniency or a lighter sentence. During the change of

12

plea colloquy, the following exchange took place:

> Q. Has any person, including an officer or agent of the government, put any pressure on you mentally or physically to force you to plead guilty in this matter?
>
> A. No.
>
> Q. Aside from the plea agreement you've entered into with the government, has any officer or agent of the government promised or suggested that you will receive a lighter sentence or any other form of leniency if you plead guilty?
>
> A. No.

[Doc. 101, p. 17.] There is simply nothing in this record to even remotely suggest that Maxwell was unlawfully induced in any way to enter his plea of guilty in this case and this part of his motion clearly lacks merit.

Maxwell also argues that he was unaware of the maximum sentence, "believing that his statutory sentence would be 15 years." This somewhat incredible allegation is clearly contradicted by the record in this case. Paragraph 2 of petitioner's plea agreement clearly and unequivocally indicates that "[t]he maximum penalty to which the defendant will be exposed by virtue of his guilty plea to Count One is a mandatory term of life imprisonment without release . . ." The plea agreement also provides that "the maximum penalty to which the defendant will be exposed by virtue of his guilty plea to Count Four is a mandatory five year sentence up to life . . ." [Doc.

13

36, ¶ 2]. Petitioner affirmed under oath that he had read, understood and signed the written plea agreement, that his attorney had explained its terms to him and that he was "fully aware of all the terms and conditions of [the] agreement with the government."

In addition, during the change of plea hearing, petitioner was informed that he was subject to a maximum possible penalty of life imprisonment as to Count One and a five year consecutive sentence as to Count Four. The following exchange occurred between the Court and the defendant:

> The Court: Alright. Will the government please advise the defendant as to the maximum possible penalty provided by the law for these offenses.
>
> Mr. Reeves: Your Honor, Count 1 with the defendant's prior record carries a mandatory term of imprisonment of life without parole, a fine of $ 8 million, a term of supervised release of at least 10 years up to life following any term of imprisonment and a mandatory assessment of $100.
>
> Count 4 carries a minimum mandatory of 5 year sentence up to life, which by statute must run consecutive with the sentence in Count 1, as well as a $250,000 fine, a term of supervised release of up to 5 years and a mandatory assessment of $100.
>
> Q. Alright. Mr. Maxwell, do you understand that that is the maximum sentence the Court can impose in these cases?
>
> A. Yes.

14

> Q. You understand that the statute with regard to Count 1 requires a mandatory minimum life sentence?
>
> A. Yes.
>
> Q. And that with regard to Count 4, the statute requires a mandatory minimum sentence of 5 years to life consecutive to the sentence you receive in Count 1?
>
> A. Yes.
>
> Q. Do you understand the Court will be required by statute to impose those sentences?
>
> A. Yes.

[Doc. 101, pp. 12-13.]

Not only did the defendant affirmatively acknowledge that he understood the maximum statutory sentence , he never, at any time prior to the filing of his § 2255 motion, expressed any lack of understanding to the Court nor did he say anything which would even suggest that he believed that his statutory maximum sentence was 15 years. While it is true that the record indicates that petitioner, at one point, indicated to counsel a desire to withdraw his guilty plea, he was afforded the opportunity to do so and no such motion was ever filed on his behalf, nor did he ever express any further interest in doing so. In addition, petitioner's counsel was asked by the Court whether he had made any representations to the defendant as to any sentence the Court "might impose in this case other than to discuss with him the

15

mandatory minimums of the statute and what the guideline range might be" and petitioner's counsel answered "no." Even if petitioner is now alleging that he was somehow mislead by his attorney, this exchange between counsel and the Court establishes otherwise and petitioner stood mute in the face of the exchange between the Court and petitioner's counsel.

Simply put, petitioner's assertion that he believed that his statutory maximum sentence would be 15 years lacks any credibility and is in fact contradicted by the record. The record of the change of plea hearing in this case establishes that the Court followed the requirements of Rule 11 and conducted a proper, clear, and thorough plea colloquy. Where the court follows the requirements of Rule 11, "the defendant is bound by his statements in response to the court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). This claim lacks merit as well.

**IV.    Conclusion**

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255

will be DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id.*

Under *Slack*, to warrant a grant of a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

A separate order will enter.

ENTER:

17

Case 2:03-cr-00072-JRG   Document 110   Filed 10/28/09   Page 17 of 18   PageID #: 127

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE